IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

AMY F.[1]

        Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,

        Defendant.

Civ. No. 3:23-cv-552-CL

**OPINION AND ORDER**

MARK D. CLARKE, Magistrate Judge.

    Plaintiff Amy F. seeks judicial review of the final decision of the Commissioner of the Social Security Administration denying her claim for disability insurance benefits. Full consent to magistrate judge jurisdiction was entered on April 17, 2023 (ECF No. 4). For the reasons provided below, the Commissioner's decision is AFFRIMED.

## BACKGROUND

    On May 21, 2018, Plaintiff protectively filed an application for disability insurance benefits, alleging disability beginning on March 5, 2013, when she was 38 years old. Tr. 270-71, 292. The claim was denied initially and on reconsideration. Tr. 168-82, 184-98. Plaintiff requested a hearing before an administrative law judge and appeared before ALJ Vadim Mozyrsky on March 5, 2020. Tr. 106-29. Plaintiff, represented by her attorney, and a vocational expert testified at the hearing. Tr. 106-29. The ALJ found Plaintiff not disabled in a written

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party or parties in this case.

1 - Opinion and Order

decision issued April 7, 2020. Tr. 11-33. The Appeals Council denied review on August 25, 2020, making the ALJ's decision the final agency decision. Tr. 1-7. Plaintiff timely appealed. Tr. 1326-27.

On appeal, the District Court reversed the ALJ's decision and remanded for further proceedings because the ALJ had "failed to properly consider Plaintiff's alleged limitations related to [Plaintiff's] convergence insufficiency when proceeding through the steps of the sequential evaluation." Tr. 1344. In turn, the Appeals Council vacated the underlying decision and remanded the case for further proceedings "consistent with the order of the court." Tr. 1347. The ALJ held a second hearing on November 4, 2022, to take further testimony on Plaintiff's convergence insufficiency and hear further testimony from the vocational expert. Tr. 1278-95. On January 11, 2023, the ALJ again found Plaintiff not disabled during the relevant period. Tr. 1253-1277. Plaintiff did not file written exceptions to the ALJ's decision, making the ALJ's decision final for purposes of judicial review. Tr. 1254, 1277.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r. Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity"? 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). This activity is work involving

significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510; 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). Unless expected to result in death, an impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a); 416.921(a). This impairment must have lasted or must be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509; 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis proceeds to the "residual functional capacity" ("RFC") assessment.

   a. The ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's RFC. This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e); 404.1545(b)-(c); 416.920(e); 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v); 404.1560(c); 416.960(c). If the claimant cannot perform such work, he or she is disabled.

*See also Bustamante v. Massanari*, 262 F.3d 949, 954-55 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 954. The Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999) (internal citations omitted); *see also* 20 C.F.R. §§ 404.1566; 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 954-55; *Tackett*, 180 F.3d at 1099.

## THE ALJ'S FINDINGS

Applying the above analysis, the ALJ made the following findings:

1. Plaintiff did not engage in substantial gainful activity during the period from her alleged onset date of March 5, 2013 through her date last insured of March 31, 2018. Tr. 1259.

2. Through the date last insured, Plaintiff had the following severe impairments: fibromyalgia, hypermobile Ehlers-Danlos syndrome, small fiber neuropathy, chronic positional headaches, obesity, neurocognitive disorder, and major depressive disorder. Tr. 1260.

3. Through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. Tr. 1260.

4. Through the date last insured, Plaintiff had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can frequently climb ramps and stairs; can never climb ladders or scaffolds; can frequently crouch; can occasionally crawl; must avoid concentrated exposure to hazards such as unprotected

heights, moving mechanical parts, or operating a motor vehicle; must avoid concentrated exposure to airborne irritants such as dust, fumes, and gases; can work in an environment with moderate noise levels; can perform simple tasks and simple work related decisions; can have superficial contact with the public such as passing people in the hallways but with no direct contact; and can tolerate few changes in the routine work setting, defined as having routine tasks and routine changes throughout the day working in the same environment from one day to the next. Tr. 1264.

5. Through the date last insured, Plaintiff was unable to perform any past relevant work. Tr. 1271.

6. The claimant was born on January 30, 1975, and was 43 years old, which is defined as a younger individual, age 18-49, on the date last insured. Tr. 1271.

7. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed, such as housekeeping cleaner (DOT 323.687-014, light, SVP2), with 195,000 jobs in the national economy; cafeteria attendant (DOT 311.677-010, light, SVP2), with 22,000 jobs in the national economy; and production assembler (DOT 706.687-010, light, SVP2), with 15,000 jobs in the national economy. Tr. 1272.

8. Plaintiff was not under a disability, as defined in the Social Security Act, at any time from March 5, 2013, the alleged onset date, through March 31, 2018, the date last insured. Tr. 1272.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on the proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "'Substantial evidence' means 'more than a mere scintilla but less than a preponderance,' or more clearly stated, 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's]

5 - Opinion and Order

conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

If the decision of the Appeals Council is the final decision of the Commissioner, this Court must review the decision of the Appeals Council to determine whether that decision is supported by substantial evidence. *Howard v. Heckler*, 782 F.2d 1484 (9th Cir. 1986). Where the evidence before the ALJ or Appeals Council is subject to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Batson*, 359 F.3d at 1198 (citing *Andrews*, 53 F.3d at 1041). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock*, 879 F.2d at 501). Additionally, a reviewing court "cannot affirm the [Commissioner's] decision on a ground that the [Administration] did not invoke in making its decision." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (citations omitted). Finally, a court may not reverse the Commissioner's decision on account of an error that is harmless. *Id.* at 1055-56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

Even where findings are supported by substantial evidence, "the decision should be set aside if the proper legal standards were not applied in weighing the evidence and making the decision." *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968). Under sentence four of 42 U.S.C. § 405(g), the reviewing court has the power to enter, upon the pleadings and transcript record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the case for a rehearing.

## DISCUSSION

Plaintiff presents the following issues for review:

1. Whether the ALJ's Step Five determination was supported by substantial evidence, and

2. Whether the residual functional capacity ("RFC") was supported by substantial evidence.

For the following reasons, the Court finds that the ALJ supported the RFC and step five determinations with substantial evidence. The Commissioner's decision is AFFIRMED.

### I. Step Five

At step five, the Commissioner has the burden "to identify specific jobs existing in substantial numbers in the national economy that the claimant can perform despite [his] identified limitations." *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995); 20 C.F.R § 416.920(g), In making this determination, the ALJ relies on the Dictionary of Occupational Titles (DOT), which is the Social Security Administration's "primary source[ ] of reliable job information" regarding jobs that exist in the national economy. *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990); 20 C.F.R §§ 416.969, 416.966(d)(1).

The ALJ typically relies on the testimony of a vocational expert ("VE") to identify specific occupations that a claimant can perform in light of his or her RFC. 20 C.F.R § 416.966(e); *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). "Under Social Security Ruling [SSR] 00-4p, ALJs must identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs [Vocational Experts] and information in the Dictionary of Occupational Titles (DOT)." *Kilpatrick v. Kijakazi*, 35 F.4th 1187, 1194 (9th Cir. 2022) (cleaned up). When a conflict exists, the ALJ must "explain in the ... decision how he ... resolved the conflict." SSR 00-4p at *4. Furthermore, an ALJ "may not rely

on evidence provided by a VE ... if that evidence is based on underlying assumptions or definitions that are inconsistent with ... regulatory policies or definitions." *Id.* at *3.

Here, the ALJ found Plaintiff had the RFC to perform a range of light work with additional limitations, including that she could have only "superficial contact with the public such as passing people in the hallways but [] no direct contact." Tr. 1264. Then, at step five, the ALJ found that Plaintiff could perform the occupations of housekeeping cleaner, cafeteria attendant, and production assembler between the alleged onset date and date last insured. Tr. 1272. Each occupation is listed as unskilled, light work, and in total they represent approximately 232,000 jobs in the national economy (195,000 of which are housekeeping cleaner jobs). Tr. 1272. In reaching this conclusion, the ALJ relied upon the vocational expert's testimony from the hearing, and found the vocational expert's testimony consistent with the information contained in the Dictionary of Occupational Titles. Tr. 1272.

Plaintiff contends the ALJ erred by relying on erroneous VE testimony regarding the housekeeping cleaner and cafeteria attendant jobs, and on an improper vocational hypothetical regarding the production assembler position. Pl.'s Br. ECF # 15 at 3-6. Because housekeeping cleaner makes up the bulk of the available jobs the ALJ identified at step five, the Court begins its analysis there. Specifically, Plaintiff argues that the housekeeping cleaner job as defined by the DOT would require public interaction beyond what is provided for in the RFC, resulting in a conflict between the VE's testimony and the DOT. Pl. Br. at 4-8.

The parties agree that the DOT definition of housekeeping cleaner is the starting point of the conflict analysis. Pl. Br. at 4, Def. Br. at 4. The DOT defines the job as follows:

> Cleans rooms and halls in commercial establishments, such as hotels, restaurants, clubs, beauty parlors, and dormitories, performing any combination of following duties: Sorts, counts, folds, marks, or carries linens. Makes beds. Replenishes supplies, such as drinking glasses and writing supplies. Checks wraps and renders personal assistance to patrons. Moves furniture, hangs drapes, and rolls carpets.

8 - Opinion and Order

> Performs other duties as described under CLEANER (any industry) I Master Title. May be designated according to type of establishment cleaned as Beauty Parlor Cleaner (personal ser.); Motel Cleaner (hotel & rest.); or according to area cleaned as Sleeping Room Cleaner (hotel & rest.).

*See* Housekeeping Cleaner, DOT No. 323.687-014, 1991 WL 672783. Although the DOT mentions rendering personal assistance to patrons as a potential duty, the VE testified that, based on his "observations,"[2] discussions with employers, and reading the literature," that any public interaction related to the housekeeping job would be "incidental" and would not conflict with the RFC or the ALJ's hypothetical questioning, which limited Plaintiff to "superficial contact with the public such as passing people in the hallways but with no direct contact." Tr. 1291-92.

Because there was no obvious or apparent conflict between the VE's testimony and the DOT, it was reasonable for the ALJ to rely upon the VE's testimony that Plaintiff could perform the housekeeping cleaner job given her RFC. Tr. 1272. The DOT explains that the role of housekeeping cleaner has a "People" level of 8, which is the lowest level for interaction with others under the DOT. *See* Housekeeping Cleaner, DOT No. 323.687-014, 1991 WL 672783 (also describing interaction with people as "Not Significant"). The DOT further explains that the activities of "Hearing" and "Talking" are "Not Present – Activity or condition does not exist." *Id.* Thus, the VE's testimony that any public interaction would be only "incidental" is in lock step with DOT description that a housekeeper cleaner would not need to hear or talk and that interaction with people would be at the lowest level. This constitutes substantial evidence to support the ALJ's step five finding that there was no conflict between the VE's testimony and

---

[2] Plaintiff attempts to distinguish the VE's testimony about "observations" with a VE's "experience," which "suggests greater reliability in their testimony regarding the suitability of jobs when compared to "observations." Pl. Reply at 3-4. But taking the VE's testimony as a whole, he described his opinion as encompassing both "observations" as well as "his discussions with employers, and his reading of the literature." Tr. 1291-92. This is "experience," and it is hard for the Court to imagine what more beyond observations, conversations, and book-learning a VE could lean upon as professional opinion to amount to his or her "experience." Plaintiff's argument on this point is unpersuasive.

the DOT, and that Plaintiff could perform the role of housekeeping cleaner with only "superficial contact with the public such as passing people in the hallways but with no direct contact." Tr. 1291-92. Absent any conflict, the ALJ did not err at step five by relying on the VE's expert testimony.

Plaintiff also argues the ALJ erred by disregarding "common experience" that housekeeping jobs require more than minimal contact with the public. Plaintiff cites *Lamear v. Berryhill,* where the Ninth Circuit suggested that "common experience" can play a role when ALJs consider whether a conflict exists between job requirements and VE testimony. 865 F.3d 1201, 1205 (9th Cir. 2017). In *Lamear,* the Ninth Circuit reversed an ALJ opinion for failure to reconcile conflicts between VE testimony and common experience, which raised doubts about whether an "ice helper, mail clerk, or parking lot cashier with limitations on his ability to 'handle, finger and feel with the left hand' could perform his duties." *Id.* at 1205. The DOT's lengthy descriptions of the underlying occupations in *Lamear* "strongly suggest[ed]" that the claimant would need two hands to do the DOT tasks at issue. *Id.* The Ninth Circuit relied on its "common experience" about these jobs to support that finding. *Id.* Unlike in *Lamear,* however, common experience and the DOT definition of the housekeeping cleaner role support the VE's conclusion that Plaintiff could do the job with minimal or no public interaction. Consistent with the VE's testimony that any public contact would be merely "incidental," Tr. 1291, housekeeper tasks from the DOT list like "check[ing] wraps" or "render[ing] personal assistance to patrons" are unlikely to be "essential, integral, or expected parts" of the housekeeping cleaner job. *Gutierrez,* 844 F.3d at 807-08 (limiting the "common experience" analysis to only the "essential, integral, or expected" parts of the job). In fact, the DOT suggests a claimant need not hear or talk to do the work. Housekeeping Cleaner, DOT No. 323.687-014, 1991 WL 672783. Common

10 - Opinion and Order

experience likewise supports the VE's reasonable inference that Plaintiff could perform this job within the parameters of the RFC. Tr. 1291. The ALJ therefore did not err by disregarding "common experience" of the housekeeping cleaner job when relying on the VE's testimony.

Plaintiff's argument that there is an apparent or obvious conflict between the VE's testimony and DOT related to the role of housekeeping cleaner lacks merit. The ALJ was entitled to rely upon the VE's testimony at step five, and the Court will not disturb the ALJ's findings on this basis.[3]

## II.   Medical Opinion Evidence

Plaintiff also argues the ALJ erred in rejecting a portion of Dr. Karla Rae Causeya, Psy.D.'s medical opinion, and by failing to incorporate relevant limitations from Dr. Julia Wong-Ngan, Ph.D.'s opinion into the RFC. Pl. Br. at 13-20.

*A. Dr. Karla Rae Causeya, Psy.D.*

When evaluating medical opinion evidence for claims filed on or after March 27, 2017, ALJs must apply 20 C.F.R. § 404.1520c for Title II claims and 20 C.F.R. § 416.920c for Title XVI claims. Under these regulations, ALJs no longer "weigh" medical opinions, but rather determine which are most "persuasive." 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b). To that end, controlling weight is no longer given to any medical opinion. *Revisions to Rules*, 82 Fed. Reg. at 5867-68; *see also* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the Commissioner evaluates the persuasiveness of medical opinions based on (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors, such as "evidence

---

[3] Because the Court finds the ALJ did not err in relying on VE testimony that Plaintiff could perform the housekeeping cleaner (195,000 jobs nationally) any error in relying on VE testimony concerning cafeteria attendant or production assembler jobs at step five was harmless. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (including an erroneous reason among other reasons is at most harmless error where an ALJ provides other reasons that are supported by substantial evidence).

11 - Opinion and Order

showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(a), (c)(1)-(5), 416.920c(a), (c)(1)-(5).

The factors of "supportability" and "consistency" are considered to be "the most important factors" in the evaluation process. 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant . . . objective medical evidence." *Woods v. Kijakazi*, 32 F.4th 785, 791–92 (9th Cir. 2022) (citing 20 C.F.R. § 404.1520c(c)(1)). Consistency means the extent to which a medical opinion is "consistent . . . with the evidence from other medical sources and nonmedical sources in the claim." *Id.* (citing 20 C.F.R § 404.1520c(c)(2)).

An ALJ must articulate how persuasive the ALJ finds the medical opinions and explain how the ALJ considered the supportability and consistency factors. 20 C.F.R. §§ 404.1520c(a), (b), 416.920c(a), (b); *see Tyrone W. v. Saul*, No. 3:19-CV-01719-IM, 2020 WL 6363839, at *7 (D. Or. Oct. 28, 2020). "The ALJ may but is not required to explain how other factors were considered, as appropriate, including relationship with the claimant (length, purpose, and extent of treatment relationship; frequency of examination); whether there is an examining relationship; specialization; and other factors, such as familiarity with other evidence in the claim file or understanding of the Social Security disability program's policies and evidentiary requirements." *Linda F. v. Comm'r Soc. Sec. Admin.*, No. C20-5076-MAT, 2020 WL 6544628, at *2 (W.D. Wash. Nov. 6, 2020). However, ALJs are required to explain "how they considered other secondary medical factors [if] they find that two or more medical opinions about the same issue are equally supported and consistent with the record but not identical." *Tyrone W.*, 2020 WL 6363839, at *6 (citing 20 C.F.R. §§ 404.1520c(b)(2) and 404.1520c(b)(3)).

Furthermore, the court must continue to consider whether the ALJ's decision is supported by substantial evidence. *See Revisions to Rules*, 82 Fed. Reg. at 5852 ("Courts reviewing claims under our current rules have focused more on whether we sufficiently articulated the weight we gave treating source opinions, rather than on whether substantial evidence supports our final decision."); *see also* 42 U.S.C. § 405(g).

Dr. Causeya performed a neuropsychological evaluation of Plaintiff in January 2020. Tr. at 1201-1211. After noting that "all her scores were in the Average range" on the Woodcock Johnson-IV Tests of Achievement and "did not indicate any impairment"; "her performance was all above a college level"; and "her speed for completing tasks was all in the average range," Tr. 1207, Dr. Causeya opined that Plaintiff had several extreme limitations, including in her ability to sustain an ordinary routine, regular attendance at work, and to work a full day and week without needing more than the allotted number or length of rest periods during the day. Tr. 1201-11, 1269-70. Dr. Causeya further identified Plaintiff's "reduced speed of processing reading and written material," noting in particular that when performing Part A of the Trail Making Tests as part of the Wechsler Adult Intelligence Scale ("WAIS-IV"), "her responses appeared to take longer than average." Tr. at 1206, 2403.

The ALJ rejected Dr. Causeya's opinion as unpersuasive. Tr. 1269-70. The ALJ reasoned that Dr. Causeya's opinion was not supported by her own examination. Tr. 1270. The ALJ further concluded that Dr. Causeya's opinions were inconsistent with the medical record and other medical opinions he found persuasive. Tr. 1270.

Regarding "supportability," the ALJ adequately discussed the strength of the evidence underlying Dr. Causeya's opinions when finding them unpersuasive. The supportability factor requires ALJs to consider the persuasiveness of a medical opinion based on how "relevant the

13 - Opinion and Order

objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion." 20 C.F.R. § 404.1520c(c)(1). The ALJ reasonably explained that Dr. Causeya's own examination notes describing Plaintiff's ability to "subtract serial sevens from one hundred without difficulty, had an FSIQ score in the average range, and presented with an adequate attention span" undermined her conclusions about Plaintiff's extreme work-related limitations. Tr. 1270 (citing Tr. 1205-08); 20 C.F.R. § 404.1520c(c)(1). Further, as noted above, while Dr. Causeya found that Plaintiff scored in the "low average" range for auditory memory and visual working memory, she noted that "all her scores were in the Average range;" her scores "did not indicate any impairment"; "her performance was all above a college level"; and "her speed for completing tasks was all in the average range." Tr. 1207. The ALJ's determination that Dr. Causeya's unduly restrictive opinion was not supported by her own "average" findings is rational and fully complies with the requirements of 20 C.F.R. § 404.1520c(c)(1). *Compare* Tr. 1263 *with* Tr. 1022.

Furthermore, since the ALJ discounted Plaintiff's own testimony about the extent to which her convergence insufficiency limits her ability to read and concentrate, and Dr. Causeya's opined limitations rely in part on similar allegations, this was a further legitimate reason to find the opinion lacked support from the record. Tr. 1270 (noting Plaintiff's mental health records showing "good attention and concentration); *see, e.g., Jacaway v. Kijakazi*, No. 20-36075, 2022 WL 728795, at *1 (9th Cir. Mar. 10, 2022) (affirming where an ALJ "discounted some medical opinions because those opinions relied heavily on [claimant]'s self-reporting, which the ALJ already had concluded was unreliable). In all, the ALJ adequately considered the supportability of Dr. Causeya's opinions by examining the bases of the conclusions, and discounting them for their internal inconsistency and lack of support in the record.

The ALJ also adequately addressed the consistency of Dr. Causeya's opinions when finding them unpersuasive. The consistency factor requires the ALJ to assess medical opinions' alignment with "evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. § 404.1520c(c)(2). The ALJ found Dr. Causeya's opinion conflicted with opinions from Frank Gonzales, Ph.D., and Joshua J. Boyd, Psy.D., who found Plaintiff able to understand and remember simple instructions, maintain concentration required of simple tasks, work with the general public on a cursory basis, and adapt to simple and routine changes in the workplace. Tr. 1269 (citing Tr. 168-82, 184-98). The ALJ found Drs. Gonzales and Boyd's opinions persuasive because they were well supported and consistent with the record, noting their alignment with large swaths of the medical record. Tr. 1269. The ALJ further explained that Plaintiff worked as a bookkeeper for her church in 2013 and 2014; read books on pain management; and completed reading tests without interference—all activities that are inconsistent with disabling limitations relating to processing speed or evaluating written information. Tr. 484-86, 1268-70. The ALJ also explained that during neuropsychological testing with Dr. Wong-Ngan, Plaintiff scored in the "average" to "upper end of average" range for vocabulary, verbal reasoning, word abstraction, fluency for reading, reading comprehension, and speed for completing tasks. Tr. 1268, 1270 (citing Tr. 2401-02). Plaintiff's normal memory, concentration, attention, insight, and judgment, and "superior" abilities with word recognition during neuropsychological testing further cemented the ALJ's analysis. *See* Tr. 1268 (citing Tr. 484-85, 1207, 2399, 2401-02). Ultimately, the Court finds that the ALJ sufficiently addressed the consistency and supportability factors, and supported the decision to discount Dr. Causeya's opinions with substantial evidence.

*B. Dr. Julia Wong-Ngan, Ph.D.*

In January 2014, Dr. Wong-Ngan performed a neuropsychological evaluation of Plaintiff. Tr. 1270, 2399. Dr. Wong-Ngan explained that Plaintiff described herself as a perfectionist who previously worked in a demanding accounting job for a private accounting firm. Tr. 2399. In March 2013, Plaintiff had a stroke during surgery to remove a benign brain mass. Tr. 2399. Thereafter, Plaintiff advised she was able to do simple bookkeeping for her church, but she did not think it would be ethical to return to her previous role with the private accounting firm because she had not fully returned to her prior level of functioning. Tr. 2399. She found it difficult to multitask; she was forgetful; and she was depressed about her condition. Tr. 2399. But her math skills were "basically normal" (although she struggled with her prior level of mental math), and she reported no issues dressing, grooming, cooking, or cleaning. Tr. 2399-2400.

During the examination, Plaintiff demonstrated organized and coherent thoughts; her auditory comprehension was intact for conversion and test instructions; her concentration was adequate for testing; her initiation and self-regulation were appropriate; and she executed tasks properly. Tr. 2401. She demonstrated "superior" reading word recognition and "average" vocabulary, reading, word abstraction, and verbal reasoning. Tr. 2402. Plaintiff was "within expectations" for her visioperceptual abilities; she scored in the "high average" range for abstract reasoning and conceptual thinking; and she had "no problems" with a problem-solving test and hypothesis testing. Tr. 2402-03. Dr. Wong-Ngan noted that "given [Plaintiff's] educational background . . . these scores suggest a mild decrement in processing speed of reading and written materials." Tr. 2402. Thus, following all this analysis, Dr. Wong-Ngan opined Plaintiff had only a "mild" cognitive impairment in learning and retrieval, working memory, and processing speed.

Tr. 2403. Dr. Wong-Ngan explained this would "not preclude employment" but would reduce her efficiency which could result in difficulty sustaining employment. Tr. 2404.

The ALJ found Dr. Wong-Ngan's opinion partially persuasive. Tr. 1270; 20 C.F.R. § 404.1520c(a). The ALJ accepted Dr. Wong-Ngan's conclusion that Plaintiff's cognitive impairment was "mild" as supported by her testing and mental status exam results, which often showed good attention and concentration. Tr. 1270. The ALJ rejected the remainder of Dr. Wong-Ngan's opinion about the claimant's ability to sustain employment, however, because it addressed an issue reserved to the commissioner. Tr. 1270. Plaintiff does not challenge the ALJ's persuasiveness determination, which the ALJ supported with substantial evidence, but argues the ALJ failed to incorporate relevant limitations from Dr. Wong-Ngan's opinion into the RFC. *See* Pl. Br. at 13-17.

The RFC is the most a person can do, despite the person's physical or mental impairments. 20 C.F.R. §§ 404.1545, 416.945. In formulating an RFC, the ALJ must consider all medically determinable impairments, including those that are not "severe," and evaluate "all of the relevant medical and other evidence," including the claimant's testimony. *Id.*; SSR 96-8p, available at 1996 WL 374184. In determining a claimant's RFC, the ALJ is responsible for resolving conflicts in the medical testimony and translating the claimant's impairments into concrete functional limitations in the RFC. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008).

In formulating Plaintiff's RFC, the ALJ reasonably relied on persuasive medical opinions and the overall record to determine the most Plaintiff could do, despite minor difficulties processing written and oral information as described by Dr. Wong-Ngan. An ALJ need only include limitations in the RFC that are supported by the record, and it is the ALJ's obligation to

17 - Opinion and Order

resolve any conflicts in the record when distilling the RFC. *See, e.g., Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 886 (9th Cir. 2006). First, the ALJ relied on the persuasive opinions from the state agency medical consultants who opined, in relevant part, that Plaintiff could perform simple work with additional restrictions despite her limitations. Tr. 1270. The ALJ also noted the numerous instances in the record showing Plaintiff's good attention and concentration, and medical records supporting the finding that Plaintiff had no more than a "mild" cognitive impairment. Tr. 1268, 1270 (citing, e.g., Tr. 358, 436, 1108, 1122, 1138, 1176, 1205). These were all reasonable bases for the ALJ to cite to support the limitations provided in the RFC.

Plaintiff argues the ALJ nevertheless erred by failing to incorporate limitations on her "understanding, remembering, and applying information" embedded within Dr. Wong-Ngan's opinion, citing *Stubbs-Danielson v. Astrue*, 539 F.3d 1169 (9th Cir. 2008). See Pl. Reply at 6. In *Stubbs-Danielson*, the Ninth Circuit held an ALJ faced with similar medical evidence describing "several mental limitations," "borderline intellectual functioning" and "slow pace in thought and action," reasonably focused on the claimant's "good persistence" and "ability to carry out simple tasks" in determining the Plaintiff "could perform simple work without public contact." 539 F.3d at 1171, 1173 (internal quotation marks omitted). The ALJ in *Stubbs-Danielson* supportably "determined that Stubbs-Danielson 'retained the residual functional capacity to perform simple, routine, repetitive sedentary work, requiring no interaction with the public.'" *Id.* at 1171 The same is true here. Dr. Wong-Ngan's "mild" findings support the RFC limitations the ALJ assessed. Tr. 1268-70, 2402-04. Social security regulations further emphasize that when a claimant's mental limitations are no more than mild, the agency will generally conclude that the mental impairments are not severe. 20 C.F.R. § 404.1520a(d)(1). The ALJ reasonably interpreted the mild limitations Dr. Wong-Ngan identified into Plaintiff's RFC limitation to simple work

18 - Opinion and Order

with further restrictions. Tr. 1264. To the extent there was a conflict between limitations embedded within Dr. Wong-Ngan's opinion and the RFC (and there does not appear to be any), this was a reasonable exercise of the ALJ's obligation to resolve conflicts in the record when fashioning an RFC. Ultimately, the ALJ reasonably adopted state agency doctors' opinions and other relevant medical evidence when formulating the RFC, and the Court finds the ALJ did not err in doing so.

## ORDER

The ALJ properly evaluated the medical record, formulated an RFC supported by substantial evidence and did not er at step five. For the reasons set forth above, the decision of the Commissioner is AFFIRMED.

It is so ORDERED and DATED this 14 day of August, 2024.

MARK D. CLARKE
United States Magistrate Judge